The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 31, 2019

## 2019COA164

**No. 18CA0720, *In Re Marriage of Blaine* — Family Law — Uniform Dissolution of Marriage Act — Disposition of Property — Uniform Premarital and Marital Agreements Act**

Where a husband voluntarily conveyed real property to his then-wife in an interspousal transfer deed and testified that he intended by that conveyance that the property would be the wife's separate property, a division of the court of appeals concludes that the district court did not err in ruling that the property was the wife's separate property in their dissolution action, even though the deed was not a marital agreement under the Uniform Premarital and Marital Agreements Act, §§ 14-2-301 to -313, C.R.S. 2019.  The division distinguishes this case from *In re Marriage of Zander*, 2019 COA 149.

The division further concludes that the district court did not err by not dividing certain funds that remained in the wife's bank account at the time of dissolution.

Court of Appeals No. 18CA0720
Jefferson County District Court No. 16DR31064
Honorable Dennis J. Hall, Judge

In re the Marriage of

Jack Allen Blaine,

Appellant,

and

Qing He,

Appellee.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE TERRY
J. Jones and Grove, JJ., concur

Announced October 31, 2019

Law Offices of Rodger C. Daley, Rodger C. Daley, Denver, Colorado, for
Appellant

GreenLaw International LLC, Ralph J. Strebel, Lakewood, Colorado, for
Appellee

Lass Moses Ramp & Cooper, LLC, Patricia A. Cooper, Marie Avery Moses,
Denver, Colorado, for Amicus Curiae Colorado Chapter of the American
Academy of Matrimonial Lawyers

¶ 1     Jack Allen Blaine (husband) appeals the permanent orders entered on the dissolution of his marriage to Qing He (wife). We affirm.

¶ 2     Because husband voluntarily conveyed real property to wife in an interspousal transfer deed, and testified that he intended by that conveyance that the property would be wife's separate property, we conclude that the district court did not err in ruling that the property was wife's separate property, even though the deed was not a marital agreement under the Uniform Premarital and Marital Agreements Act (UPMAA), §§ 14-2-301 to -313, C.R.S. 2019. In so holding, we distinguish this case from *In re Marriage of Zander*, 2019 COA 149.

¶ 3     We further conclude that the district court did not err by not dividing certain funds that remained in wife's bank account at the time of dissolution.

## I. Background

¶ 4     The parties' two-year marriage ended in 2018. The sole issue for permanent orders was husband's claim that wife had borrowed a total of $346,500 from him in various increments over the course of the marriage and had used the funds primarily toward the

separate property purchase of a home in California worth $1,100,000.  Husband argued that wife should be ordered to repay the borrowed funds and that it would be unconscionable for her to keep the California home without doing so.  Wife argued that the funds were given to her by husband with no expectation of repayment.

¶ 5　　After a hearing, the district court found that the first $50,000 husband had transferred to wife was a gift for wife's mother and was given according to Chinese custom with no expectation of repayment, but that the remainder of the funds were neither loaned nor gifted but were funds husband contributed to the marriage.  However, because after transferring the funds to wife, husband signed an "interspousal transfer deed" conveying the California home to her "as her sole and separate property," any marital interest husband had in the home based on the funds he provided "was extinguished."  Therefore, the court set aside the home as wife's separate property.  It found the increase in value of the home during the marriage was $82,939, and awarded that amount to husband.

¶ 6    The court denied husband's motion to reconsider the permanent orders.

## II.  Analysis

### A.  Failure to Set Aside the Interspousal Transfer Deed

¶ 7    Husband argues that the district court abused its discretion by failing to set aside the interspousal transfer deed.  We disagree.

¶ 8    In the district court, husband did not argue that the interspousal transfer deed should be set aside and the $1,100,000 California home divided as marital property.  He instead argued only that wife should be ordered to repay the $346,500 he had loaned her, less $2500 that he admitted at the hearing he had given without expecting repayment.  *See Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("A party's mere opposition to its adversary's request . . . does not preserve all potential avenues for relief on appeal.  We review only the specific arguments a party pursued before the district court."); *see also Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18.

¶ 9    Husband did, however, assert in the trial management certificate and at the hearing, as he does on appeal, that there is a

fiduciary duty between spouses. Relying on California case law, husband argues that the interspousal transfer deed creates a "presumption of undue influence," which then requires wife, the spouse advantaged by the transaction, to establish that husband, the disadvantaged spouse, signed the deed "freely and voluntarily" and with full knowledge of the facts and complete understanding of the effects of the deed. However, even if this argument could be construed as an implied request to set aside the deed because of wife's breach of her fiduciary duty, the record does not support that result.

¶ 10 Husband testified that he signed the interspousal transfer deed voluntarily. He did not testify that wife induced him to sign through physical or emotional abuse, as his reply brief implies. He further testified that he had a master's degree in business, that he knew the deed was a legal document, that he had experience signing deeds, and that he read and understood the deed and the instructions transmitted with it before signing it. He acknowledged that the deed made the California home wife's separate property and that he was "okay with" that when he signed the deed. He also testified that he had been divorced previously, had entered into a

4

separation agreement in that earlier divorce, and was familiar with the concept of separate property.

¶ 11     Accordingly, even assuming that a fiduciary duty existed in relation to the deed, we conclude that the standard husband argues for discharge of that duty — that the disadvantaged spouse enter into the transaction freely and voluntarily, with full knowledge of the facts, and complete understanding of the effect of the transaction — was met based on husband's own testimony.

¶ 12     In sum, we see no basis for reversal of the judgment for failure to set aside the deed.  Thus, we need not address the parties' arguments concerning whether the scope of the fiduciary duty between divorcing spouses in Colorado is the same as it is in California.  *See In re Marriage of Dadiotis*, 2014 COA 28, ¶ 5 (affirming district court's judgment based on different reasoning than the court used).

## B.  Enforcement of the Deed

¶ 13     Husband contends that the district court abused its discretion by excluding the California home from marital property because the interspousal transfer deed was not a "valid agreement" under

section 14-10-113(2)(d), C.R.S. 2019.  We conclude that the transfer was valid notwithstanding that section.

¶ 14    We requested and received an amicus brief on this issue from the Colorado chapter of the American Academy of Matrimonial Lawyers.  And we agree with the portion of that brief arguing that property can be excluded from a marital estate by a deed conveying such property from one spouse to the other as separate property, provided that there is also evidence of the conveying spouse's intent to exclude the property.

¶ 15    While this case was pending, another division of this court concluded in *Zander* that an oral marital agreement to exclude property from a marital estate is unenforceable because marital agreements must be in writing and signed by the parties.  *See Zander*, ¶ 29 (applying the Colorado Marital Agreements Act (CMAA), § 14-2-303, C.R.S. 2007, in effect at the time, which required marital agreements to be in writing and signed by the parties in order to be enforceable).  However, because the property at issue here was *conveyed* by husband to wife as her separate property and because husband unequivocally acknowledged at the permanent orders hearing that he intended by that conveyance that

6

the property would be wife's separate property, this case is unlike *Zander.* We conclude that the district court did not err under these circumstances in setting aside the California home as wife's separate property.

¶ 16 Marital property means all property acquired by either spouse during the marriage. § 14-10-113(2). Property acquired during marriage is presumed marital regardless of whether title is held individually or jointly. § 14-10-113(3). This presumption is overcome, however, by a showing that such property was acquired by a method described in the exceptions to section 14-10-113(2), including property that is acquired by gift and property that is excluded by valid agreement of the parties. § 14-10-113(2)(a), (d), (3); *see In re Marriage of Balanson*, 25 P.3d 28, 36 (Colo. 2001). Whether the parties intended to exclude property from their marital estate on these bases hinges on their intent and actions, and is a factual issue for the district court to determine. *In re Marriage of Bartolo*, 971 P.2d 699, 700-01 (Colo. App. 1998).

¶ 17 Wife, through her real estate agent, sent the interspousal transfer deed to husband. The district court found that husband signed it to facilitate wife's purchase of the California home, and

that the deed operated to exclude the home from marital property under section 14-10-113(2)(d).  The court also found, however, that the deed did not constitute a "marital agreement" under the UPMAA because it was not signed by both parties.  *See* § 14-2-306, C.R.S. 2019.  The court did not err under the circumstances of this case — where husband signed a deed conveying the California home to wife as her separate property and testified unequivocally that it was his understanding and intent in doing so that the home would be wife's separate property.

¶ 18     Unlike in *Zander*, neither party here alleged an "agreement" that the California home would be wife's separate property. Instead, husband *conveyed* the property to wife as her sole property, admitting that this was his intent.  *See Zander*, ¶ 29.  A conveyance is not an agreement, marital or otherwise.  *See* § 14-2-302(2), C.R.S. 2019 (defining a "[m]arital agreement" as "an agreement between spouses"); *see also Platt v. Aspenwood Condo. Ass'n*, 214 P.3d 1060, 1066 (Colo. App. 2009) (noting that "[a] conveyance is a transfer of title to property by deed" and distinguishing a conveyance from an agreement to convey).  As a result, to be effective to preclude husband's interest in the property,

8

the interspousal transfer deed did not have to meet the requirements and formalities of the UPMAA, namely signature by both parties; access by both parties to independent legal representation, or an express notice in the agreement of their waiver of specific rights; and adequate financial disclosure by both parties. *See* § 14-2-309, C.R.S. 2019.

¶ 19    Although it was not an agreement, the interspousal transfer deed was nonetheless effective to convey the California home to wife as her separate property.  The present case is similar to *Bartolo*.  There, a residence that had been owned before the marriage by the wife and her mother was conveyed to the spouses jointly after they married.  *Bartolo*, 971 P.2d at 699.  When the parties began having marital difficulties, the husband executed a quitclaim deed at the wife's request, conveying the residence to her alone.  *Id.* at 699-700.  A division of this court upheld the district court's determination that the residence was the wife's separate property under section 14-10-113(2)(a) and (d) because the husband had executed a lawful conveyance totally divesting himself of the property and, on recording of the deed by the wife, placing the property completely beyond his control.  *Id.* at 700; *see also In re Marriage of Vickers*,

686 P.2d 1370, 1371 (Colo. App. 1984) (similarly excluding property from a marital estate when it was conveyed from one spouse to the other and the conveying spouse testified that he knew the effect of the deed would be to transfer any interest he had in the property to the other spouse).

¶ 20    Husband did the same thing here and, similar to the spouse in *Vickers*, he acknowledged that he read and understood the interspousal transfer deed before signing it, he knew the deed would make the California home wife's separate property, he was "okay with" that result, and he understood — from his involvement in a prior divorce — the concept of separate versus marital property in the context of a divorce.  Accordingly, the district court did not err in declining to characterize the conveyance as a marital agreement that must comply with the UPMAA.  *Cf. Bartolo*, 971 P.2d at 700 (setting aside property deeded from one spouse to the other as separate property without addressing the CMAA).  *But cf. In re Marriage of Bisque*, 31 P.3d 175, 180 (Colo. App. 2001) (conveyances were set aside when they were made *pursuant to an underlying separation agreement* that was determined to be invalid under the CMAA).

10

¶ 21    Our disposition would likely be different had husband not so clearly expressed his understanding and intent that the interspousal transfer deed would render the California home wife's separate property.  We agree with amicus that the mere fact of a conveyance of property between spouses is not enough to render such property separate on dissolution without additional evidence that the conveying spouse intended that result.  Because the record in this case unequivocally reflects husband's intent that the California home would be wife's separate property, we affirm.

### C.  Undivided Funds in Wife's Bank Account

¶ 22    Husband also contends that the district court abused its discretion under section 14-10-113(1) by failing to divide $73,000 of the borrowed funds that remained in wife's bank account at dissolution.  We disagree.

¶ 23    As the district court noted, husband made this argument for the first time in his post-trial motion.  He did not argue at the hearing that $73,000 of the borrowed funds remained in wife's bank account and needed to be divided by the court.  To the contrary, he consistently asserted that wife had used $326,000 of the $346,500 he had loaned her to purchase the California home.  He asked the

11

court to order wife to repay the borrowed funds, and did not ask the court to divide wife's bank account. Indeed, as wife points out, the parties stipulated that each of them would receive all of the funds in their respective bank accounts, and the court adopted their stipulation.

¶ 24 "'Stipulations are a form of judicial admission,' and 'are binding on the party who makes them.'" *Maloney v. Brassfield*, 251 P.3d 1097, 1108 (Colo. App. 2010) (citation omitted). A party may be relieved of a stipulation "upon timely application" and only "if there is a sound reason in law or equity for avoiding or repudiating" the stipulation. *Id.* (citation omitted).

¶ 25 Because husband did not request that the district court relieve him from the stipulation, we do not address that issue. *See Melat*, ¶ 18 ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal."). Nor do we address husband's argument concerning the $73,000. *See Fid. Nat'l Title Co. v. First Am. Title Ins. Co.*, 2013 COA 80, ¶ 51 ("Where . . . a defense is raised for the first time in a post-trial motion, it is not preserved for appellate review."). And we do not address husband's argument — raised for the first time in his reply

brief — acknowledging that the $73,000 was not in wife's bank account at the time of the hearing but arguing that the funds should still be divided because wife dissipated them. *See In re Marriage of Drexler*, 2013 COA 43, ¶ 24 (appellate courts do not address arguments raised for the first time in a party's reply brief).

### III. Wife's Request to Strike Portions of Husband's Brief

¶ 26 Finally, we deny wife's request to strike portions of husband's brief for failure to cite legal authority. Husband relies on section 14-10-113 and parts of the record for his contention that the district court omitted assets from the marital property distribution as well as for his contention concerning enforcement of the deed, and he also relies on the UPMAA, §§ 14-2-301 to -313. We conclude that his brief complies with C.A.R. 28(a)(7)(B) and that striking any part of it is not warranted.

### IV. Conclusion

¶ 27 The judgment is affirmed.

JUDGE J. JONES and JUDGE GROVE concur.