Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us. Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 16, 2021

## 2021 CO 13

**No. 19SC967, *In re Marriage of Blaine*—Uniform Dissolution of Marriage Act ("UDMA")—Presumption of Marital Property—Statutory Exceptions to Presumption of Marital Property—Valid Agreement—Interspousal Transfer Deed.**

The issue in this marriage dissolution case is whether a spouse's conveyance of his interest in a home through an interspousal transfer deed ("ITD") automatically overcomes the presumption of marital property in the Uniform Dissolution of Marriage Act ("UDMA"), provided that there is proof that the conveying spouse intended to exclude the property from the marital estate. The supreme court concludes that it does not.

Under the UDMA, "marital property" is subject to equitable division in a dissolution proceeding. The UDMA creates a presumption of marital property with respect to all property acquired by either spouse during the marriage. But this presumption is overcome by a showing that the property was acquired by a method listed in one of four statutory exceptions. The court of appeals correctly acknowledged that the ITD executed in this case did not fall within the statutory

exception that allows couples to exclude property from the marital estate through a valid agreement. Yet, without the benefit of findings in the record as to whether any of the other exceptions applied, and without itself exploring those exceptions, the court of appeals concluded that the ITD was an effective means of conveying, as separate property, a spouse's interest in a home acquired during the marriage, given that there was evidence of the conveying spouse's intent to exclude the property from the marital estate.

The supreme court now holds that a party may overcome the marital property presumption in the UDMA only through the four statutory exceptions. Because the court of appeals improperly created a new exception to the presumption, its judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2021 CO 13

### Supreme Court Case No. 19SC967
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 18CA720

**In re the Marriage of**

**Petitioner:**

Jack Allen Blaine,

**and**

**Respondent:**

Qing He.

**Judgment Reversed**
*en banc*
February 16, 2021

**Attorneys for Petitioner:**
Law Offices of Rodger C. Daley
Rodger C. Daley
Dorian Geisler
     *Denver, Colorado*

**Attorneys for Respondent:**
GreenLaw International LLC
Ralph J. Strebel
     *Highlands Ranch, Colorado*

Aitken Law, LLC
Sharlene Aitken
        *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Chapter of the American Academy of Matrimonial Lawyers:**
Lass Moses Ramp & Cooper LLC
Patricia A. Cooper
Marie Avery Moses
        *Denver, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1 We agreed to review this marriage dissolution case to determine whether a spouse's conveyance of his interest in a home through an interspousal transfer deed ("ITD") automatically overcomes the presumption of marital property in the Uniform Dissolution of Marriage Act, §§ 14-10-101 to -133, C.R.S. (2020) ("UDMA"), provided that there is proof that the conveying spouse intended to exclude the property from the marital estate. We conclude that it does not.

¶2 Under the UDMA, "marital property" is subject to equitable division in a marriage dissolution proceeding. § 14-10-113(1), C.R.S. (2020). The UDMA creates a "presumption of marital property" with respect to "all property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation." § 14-10-113(3). But this presumption "is overcome by a showing that the property was acquired by a method listed" in one of four statutory exceptions. *Id.* (referring to exceptions (a) through (d) in section 14-10-113(2)). The court of appeals correctly acknowledged that the ITD executed in this case did not fall within the statutory exception that allows couples to exclude property from the marital estate through a "valid agreement." § 14-10-113(2)(d). Yet, without the benefit of findings in the record as to whether any of the other exceptions applied, and without itself exploring those exceptions, the court of appeals concluded that the ITD was an effective means of conveying, as separate property, a spouse's interest

in a home acquired during the marriage, given that there was evidence of the conveying spouse's intent to exclude the property from the marital estate.

¶3 We now hold that a party may overcome the marital property presumption in the UDMA only through the four statutory exceptions set forth in section 14-10-113(2). Because the court of appeals improperly created a new exception to the presumption, we reverse its judgment and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶4 In September 2015, Jack Allen Blaine ("Husband"), a resident of Colorado, and Qing He ("Wife"), a resident of the People's Republic of China, were married in Jefferson County, Colorado. The couple separated fourteen months later, in November 2016, and Husband initiated dissolution proceedings the following month. Most of the parties' disagreements were resolved through mediation. But the parties could not settle their differences on the equitable division of the marital property. The district court thus held an evidentiary hearing, after which it issued written permanent orders.

¶5 At the heart of the parties' dispute was an ITD Husband executed during the marriage in connection with Wife's purchase of a home in Dublin, California. Wife agreed to pay approximately $1 million for that home. The ITD purported to convey any interest Husband had in the Dublin home to Wife as her separate

4

property. The story of the ITD, though, cannot be accurately told without discussing some of the funds Wife used to purchase the Dublin home.

¶6 Over the course of the marriage, Husband provided Wife a total of $296,500 through eleven transfers of money.[1] She used most of that money to buy the Dublin home. As she was in the process of securing financing for the home, she told Husband that the mortgage company would not approve her loan unless he relinquished his interest in the property by signing an ITD. Wife then forwarded Husband an email from the mortgage company containing a proposed ITD, which he signed. The ITD indicated that it was a grant deed "executed by Jack A. Blaine (grantor) to Qing He, a married woman, as her sole and separate property, (grantee) covering the [Dublin] property being transferred in escrow."

¶7 At the permanent orders hearing, Husband argued that his eleven transfers of money were loans to Wife that she should be ordered to pay back. Wife countered that the transfers were gifts. The district court disagreed with both parties. It found that the eleven transfers were neither loans nor gifts and that, therefore, neither party had overcome the presumption that the transfers were

---

[1] The district court found that Husband had additionally provided Wife $50,000 as a gift for her mother. That gift, which the court treated as Wife's separate property, is not involved in this appeal.

marital property. Consequently, it treated as marital property the $296,500 Husband had provided Wife. But the court's analysis didn't end there.

¶8 The court explained that, had Wife kept the transferred funds in the form of cash, it would have concluded that the funds were marital property subject to equitable division in this dissolution proceeding. However, since Wife had used most of those funds to purchase the Dublin home, and since Husband had subsequently signed an ITD conveying his interest in the home to Wife "as her sole and separate property," the court determined that any marital interest Husband had in the home "was extinguished." Thus, the court set aside the home as Wife's separate property, though it treated the increase in the value of the home during the marriage ($82,939) as marital property, which it awarded to Husband.

¶9 Notably, the court observed that the ITD did not constitute a "valid agreement" under the last of the four statutory exceptions to the presumption of marital property in the UMDA—exception (d). *See* § 14-10-113(2)(d). However, without analyzing whether any of the other exceptions—exceptions (a) through (c)—applied, the court ruled that the ITD rendered the Dublin home Wife's separate property.

¶10 After the court denied Husband's motion to reconsider, he appealed to the court of appeals, arguing that the Dublin home could not be excluded from the marital estate because the ITD did not fall within exception (d). A unanimous

6

division of the court of appeals agreed that the ITD did not constitute a "valid agreement" pursuant to exception (d). *In re Marriage of Blaine*, 2019 COA 164, ¶¶ 17–19, __ P.3d __. But the division nevertheless upheld the district court's determination that the Dublin home was Wife's separate property. *Id.* at ¶¶ 15, 21. The division did so despite the lack of findings in the record related to the applicability of exceptions (a) through (c). And the division itself did not explore any of those exceptions. Instead, relying on two court of appeals decisions, it held that "property can be excluded from a marital estate by a deed conveying such property from one spouse to the other as separate property, provided that there is also evidence of the conveying spouse's intent to exclude the property." *Id.* at ¶ 14.

¶11 Husband then asked us to review the division's decision. We granted his petition in part, though we reframed the relevant issue.[2]

## II. Analysis

¶12 Husband's appeal requires us to interpret multiple statutes. Specifically, we must construe section 14-10-113, which is part of the UDMA, as well as sections

---

[2] The reframed issue we agreed to review is the following:

1. Whether the court of appeals erred when it concluded that an Interspousal Transfer Deed is an exception to the Uniform Dissolution of Marriage Act's marital property presumption.

14-2-302 to -303 and -305 to -306, C.R.S. (2020), which are part of the Uniform Premarital and Marital Agreements Act ("UPMAA").[3]

¶13    We begin by articulating the controlling standard of review and the relevant principles of statutory interpretation. Guided by that authority, we proceed to analyze the division's decision.

### A.  Standard of Review and Relevant Principles of Statutory Interpretation

¶14    Our court reviews questions of statutory interpretation de novo. *Bill Barrett Corp. v. Lembke*, 2020 CO 73, ¶ 14, 474 P.3d 46, 49. In interpreting a statute, our goal is to ascertain and effectuate the legislature's intent. *Id.* We always look first to the plain language of the statute. *People in Interest of G.S.S.*, 2020 CO 32, ¶ 11, 462 P.3d 592, 595. "If the statutory language is clear, we apply it as written and need not resort to other rules of statutory construction." *Dep't of Revenue v. Agilent Techs., Inc.*, 2019 CO 41, ¶ 16, 441 P.3d 1012, 1016. When a statutory term is not defined, we construe it in accordance with its ordinary and natural meaning. *Cowen v. People*, 2018 CO 96, ¶ 14, 431 P.3d 215, 218.

---

[3] The UDMA was adopted in 1971. Ch. 130, sec. 1, § 14-10-113, 1971 Colo. Sess. Laws 520. The UPMAA, in turn, replaced the Colorado Marital Agreement Act ("CMAA") on July 1, 2014, and is codified at sections 14-2-301 to -313, C.R.S. (2020). Ch. 239, sec. 1, § 14-2-301, 2013 Colo. Sess. Laws 1159.

8

¶15 We must give consistent effect to all parts of a statute, ensuring that each provision exists in harmony with the overall legislative design. *Mook v. Bd. of Cnty. Comm'rs*, 2020 CO 12, ¶ 24, 457 P.3d 568, 574. As well, we are required to "adopt a construction that avoids or resolves potential conflicts" with other statutes and gives "effect to all legislative acts, if possible." *Id.*, 457 P.3d at 575 (quoting *People v. Stellabotte*, 2018 CO 66, ¶ 32, 421 P.3d 174, 180).

## B. Application

¶16 Section 14-10-113, which addresses the "[d]isposition of property" in a dissolution proceeding, requires the district court to "divide the marital property, without regard to marital misconduct, in such proportions as the court deems just after considering all relevant factors." § 14-10-113(1). Subsection (2) of the same statute generally defines "marital property" as "all property acquired by either spouse subsequent to the marriage." § 14-10-113(2). But there are four exceptions to this definition:

> (a) Property acquired by gift, bequest, devise, or descent;
> (b) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;
> (c) Property acquired by a spouse after a decree of legal separation; and
> (d) Property excluded by valid agreement of the parties.

*Id.*

¶17 In line with subsection (2), subsection (3) creates a "presumption of marital property" with respect to "all property acquired *by either spouse* subsequent to the marriage and prior to a decree of legal separation." § 14-10-113(3) (emphasis added). However, that presumption "is overcome by a showing that the property was acquired by a method listed" in one of the four exceptions set forth in subsection (2). *Id.*

¶18 The district court determined that the ITD did not constitute a "valid agreement" under exception (d) because it was "signed by [H]usband" but "not by [W]ife." The division agreed. *Blaine*, ¶ 17. So do we.

¶19 As relevant here, the UPMAA defines a "marital agreement" as "an agreement between spouses who intend to remain married which affirms, modifies, or waives a marital right or obligation during the marriage or at . . . marital dissolution." § 14-2-302(2), C.R.S. (2020). Hence, an agreement between such spouses to exclude property from the marital estate—i.e., to treat as separate any property that would otherwise be presumed to be marital at a dissolution proceeding—is a marital agreement under the UPMAA.

¶20 Significantly, the UPMAA requires that a marital agreement "be in a record and signed by both parties." § 14-2-306, C.R.S. (2020). Indeed, "[a] marital

10

agreement is effective on signing by both parties." § 14-2-307, C.R.S. (2020).[4] Thus, an agreement between spouses intending to remain married, which seeks to exclude property from the marital estate, cannot be a "valid agreement" under exception (d) unless it is in writing and signed by both parties.

¶21 Because the ITD was not signed by both parties, it was not a "valid agreement" for purposes of exception (d). But after correctly discerning as much, the division held that the ITD "was nonetheless effective" to convey Husband's interest in the Dublin home to Wife "as her separate property." *Blaine*, ¶ 19. The division did so, however, without the benefit of findings in the record as to whether exceptions (a) through (c) applied and without exploring any of those exceptions. Instead, the division created a new exception: "[P]roperty can be excluded from a marital estate by a deed conveying such property from one spouse to the other as separate property, provided that there is also evidence of the conveying spouse's intent to exclude the property." *Id.* at ¶ 14. This was error.

---

[4] The UPMAA's predecessor, the CMAA, which was adopted in 1986, Ch. 118, sec. 1, § 14-2-301, 1986 Colo. Sess. Laws 713, contained similar provisions. *See, e.g.*, § 14-2-302(1), C.R.S. (2013) (defining "marital agreement" as "an agreement . . . between present spouses, but only if signed by both parties"); § 14-2-303, C.R.S. (2013) (providing that a marital agreement was required to "be in writing and signed by both parties"); § 14-2-305, C.R.S. (2013) (confirming that a marital agreement became effective "upon the signatures of both parties").

"We do not add words to a statute." *Boulder Cnty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo. 2011). "We only go where the statute takes us." *Ziegler v. Park Cnty. Bd. of Cnty. Comm'rs*, 2020 CO 13, ¶ 19, 457 P.3d 584, 589.

¶22 The division's reliance on *In re Marriage of Bartolo*, 971 P.2d 699 (Colo. App. 1998), and *In re Marriage of Vickers*, 686 P.2d 1370 (Colo. App. 1984), was misplaced. Neither case supports the division's holding.

¶23 In *Bartolo*, the division upheld the district court's finding that the husband there "had made a gift" to his wife by conveying his interest in a residence through a quitclaim deed. 971 P.2d at 700. Rather than endorse a new ITD exception to the marital property presumption, however, the *Bartolo* division simply concluded that the wife in that case had overcome the presumption by presenting "clear and convincing evidence" that the conveyance was *a gift*, which is part of exception (a). *Id.* at 700–01.

¶24 Similarly, in *Vickers*, the division didn't usher in a new ITD exception to the marital property presumption. It merely applied exception (d). *Vickers*, 686 P.2d at 1371. The *Vickers* division noted that the parties had executed "*a valid and binding agreement* which included, as their separate property, . . . the increases in value of any separate property." *Id.* (emphasis added). Because the couple's residence was the separate property of the wife in that case, it was error under the

parties' valid agreement for the trial court to have considered the increase in the residence's value as marital property. *Id.*

¶25 Here, by contrast, in concluding that Wife had overcome the presumption of marital property in the district court, the division didn't identify a statutory exception that applied to Husband's conveyance of his interest in the Dublin home. That Husband's conveyance was through an ITD and was accompanied by his intent to exclude the Dublin home from the marital estate did not suffice to overcome the presumption. That's because there is no ITD exception in section 14-10-113(2)—even if the ITD is accompanied by the conveying spouse's intent to exclude the property in question from the marital estate.

¶26 On remand, the division should return the case to the district court with instructions to make findings as to whether any statutory exception not previously addressed applies. *See* § 14-10-113(2)(a)–(c). We realize that the district court found that the eleven transfers totaling $296,500 constituted marital property. But, having determined that these funds constituted marital property, the court did not further consider whether Husband's *subsequent* conveyance of his interest in the Dublin home to Wife through the ITD fell within one of the exceptions listed in section 14-10-113(2)(a)–(c).

¶27 In sum, the ITD may be evidence of one of the statutory exceptions to the marital property presumption. But the ITD—even if accompanied by Husband's

13

intent to exclude the Dublin home from the marital estate—cannot give birth to a new exception to the presumption. "Of our three branches of government, only the General Assembly has the power to make law." *Amica Life Ins. Co. v. Wertz*, 2020 CO 29, ¶ 17, 462 P.3d 51, 54.

### III. Conclusion

¶28 We hold that a party may overcome the marital property presumption in the UDMA only through the four exceptions set forth in section 14-10-113(2)(a)–(d). Because the division improperly created a new exception to the presumption, we reverse its judgment and remand for further proceedings consistent with this opinion.[5]

---

[5] On remand, the district court should exercise its discretion in deciding whether to allow the parties to present additional evidence.