24CA1134 Marriage of Babson 07-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1134
Arapahoe County District Court No. 22DR31039
Honorable Frank Moschetti, Magistrate

---

In re the Marriage of

Kevin Babson,

Appellant and Cross-Appellee,

and

Kristin Babson,

Appellee and Cross-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE LIPINSKY
Lum and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

---

Warren Domangue, Littleton, Colorado, for Appellant and Cross-Appellee

Feingold Horton, PLLC, Jennifer Feingold, Sarah Quinlan, Greenwood Village, Colorado, for Appellee and Cross-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Petitioner, Kevin Babson (husband), appeals the permanent orders entered in this dissolution of marriage action between him and respondent, Kristin Babson (wife). Wife cross-appeals the district court's division of marital property. We affirm the judgment in part, reverse it in part, and remand for the court to recalculate the value of the marital estate and to revise its division of marital property.

## I.    Background

¶ 2     Husband filed the petition for dissolution of marriage in this case in August 2022. Husband and wife were parties to an earlier dissolution of marriage case (the 2016 case) that was voluntarily dismissed. The parties entered into a separation agreement (the 2016 separation agreement) in the 2016 case.

¶ 3     The court conducted a permanent orders hearing in this case on September 5, 2023. On August 31, in preparation for the permanent orders hearing, the parties filed a joint trial management certificate that reflected their disagreement regarding the marital value of certain assets, including the following:

- E*Trade investment account x2715 (account 2715);

- a property on East Ellsworth Avenue in Denver (the Ellsworth property);

- a property on East Aberdeen Avenue in Englewood (the Aberdeen property);

- husband's E*Trade individual retirement account x7021 (account 7021); and

- a property on East Luke Avenue in Phoenix, Arizona (the Arizona property).

Each party also filed property and debt division spreadsheets.

¶ 4     The court announced its ruling on property distribution and other matters from the bench at a hearing conducted on December 1, 2023.  The court adopted the transcript of that hearing as its permanent orders.  On June 3, 2024, the court entered a decree of dissolution of marriage.

¶ 5     Husband asserts four contentions on appeal: the court (1) clearly erred by finding that account 2715 had a marital value of $834,349.06; (2) clearly erred by finding that wife owned a 32% interest in the Ellsworth property, determining it had a marital value of only $85,128, and awarding it to wife; (3) erred because it did not award husband the value of his premarital interest in the

Aberdeen property; and (4) abused its discretion by dividing the home equity line of credit (HELOC) on the Aberdeen property equally between the parties.

¶ 6 On cross-appeal, wife argues that the court erred by including in its calculation of the property division a $55,000 reduction in the value of husband's interest in account 7021 after the parties' marriage and by finding no marital interest in the Arizona property's appreciation in value. In addition, wife requests an award of her appellate attorney fees and costs pursuant to C.A.R. 39.1 and section 13-17-102, C.R.S. 2024.

## II. Analysis

### A. Husband's Appellate Arguments

#### 1. The Court Did Not Err in Assigning Account 2715's Marital Value

¶ 7 Husband contends that the court erred by finding that account 2715 had a marital value of $834,349.06 and should have assigned it a marital value of $37,505.45. We agree with the first contention but not with the second.

## a.  Additional Facts

¶ 8     The court said in the permanent orders that the marital value of account 2715 was $834,349.06.  Both parties agreed that this number was erroneous.

¶ 9     On June 10, 2024, wife filed a C.R.C.P. 60(a) motion (the Rule 60(a) motion) to correct what she described as a typographical error in the court's determination of the marital value of account 2715. Wife said the correct figure was $86,349.06.

¶ 10    She documented that number in a joint spreadsheet (the reply spreadsheet) that she submitted together with her reply in support of the Rule 60(a) motion.  Scott Saltzman, wife's forensic accountant and valuation expert, had testified at the permanent orders hearing that the marital value of account 2715 was $86,349.06.

¶ 11    Eleven days after husband filed his opening brief in this appeal — on November 15, 2024 — the court granted the Rule 60(a) motion and revised the marital value of account 2715 to $86,349.06.  Wife filed her opening-answer brief in this appeal on December 17.

### b. Standard of Review

¶ 12 "It is within the trial court's discretion to choose the valuation of one party over the other, or to arrive at its own reasonable determination of value." *In re Marriage of Nordahl*, 834 P.2d 838, 842 (Colo. App. 1992). "Unless the trial court's findings are clearly erroneous, its valuation is binding on review." *Id.*

¶ 13 "It is the responsibility of the trial court as the trier of fact to determine the credibility of the witness[es] and the sufficiency, probative effect, and weight of the evidence. That determination will not be disturbed on review unless the findings of the trial court are manifestly erroneous." *In re Marriage of Hoyt*, 742 P.2d 963, 964 (Colo. App. 1987).

### c. The Court Did Not Err by Revising Its Valuation of Account 2715 to $86,349.06

¶ 14 Because the court corrected the error in its initial valuation of account 2715, husband's argument that the court clearly erred by finding that account 2715 had a marital value of $834,349.06 is moot. *See In re Marriage of Salby*, 126 P.3d 291, 301 (Colo. App. 2005) ("An issue is moot when a judgment, if rendered, would have no practical legal effect upon the existing controversy.").

¶ 15 Husband further asserts that the court should have assigned a marital value of $37,505.45 to account 2715. But husband does not explain how the court abused its discretion by assigning a marital value of $86,349.06 to account 2715 when it corrected its typographical error. Rather, he merely asserts that the court erred by not accepting the opinion testimony of Dan Powers, husband's accounting expert, that account 2715 had a marital value of $37,505.45.

¶ 16 However, the court accepted Saltzman's marital valuation of account 2715 over Powers's calculation after finding that Saltzman was more credible than Powers. The court said Saltzman was "the expert [it] put more authority in, as opposed to [Powers] . . . [because Saltzman], with his experience, utilized proper procedures to do the evaluations and those [were] the ones that [the court] adopted." Husband ignores the court's finding that Saltzman was more credible than Powers. For these reasons, we may not disturb the court's findings on the experts' credibility. *See Marriage of Hoyt*, 742 P.2d at 964.

¶ 17 Thus, the court did not clearly err by assigning account 2715 a marital value of $86,349.06.

## 2. The Court Did Not Err by Finding that Wife Owned a 32% Interest in the Ellsworth Property, and That It Had Only $85,128 in Marital Value

¶ 18    We disagree with husband's assertions regarding the Ellsworth property.

¶ 19    The 2016 separation agreement specifies that "[w]ife owns a 32% interest" in the Ellsworth property "along with her family" and "[h]usband waives any and all interest in this property." The parties do not dispute that a trust for wife's family, the Arch Family Trust, acquired the Ellsworth property before the parties married.

¶ 20    The court found that the evidence supported wife's position that she owned a 32% interest in the Ellsworth property and rejected husband's assertion that wife owned 100% of such property. The court assigned a marital value of $85,128 to the Ellsworth property. The court based its findings on Saltzman's testimony and the language of the 2016 separation agreement.

¶ 21    Husband contends that the court clearly erred by finding that wife had a 32% ownership interest in the Ellsworth property and that the property had a marital value of $85,128, as no evidence supported such findings. He argues that the court improperly relied on the language of the 2016 separation agreement addressing

the Ellsworth property because the 2016 separation agreement, which the parties executed during the pendency of the 2016 case, "was never made an order of the court."

¶ 22    We do not need to decide whether the 2016 separation agreement is an enforceable contract or order because other evidence in the record supports the court's finding that wife had a 32% ownership interest in the Ellsworth property. The evidence showed that the Ellsworth property was titled in the Arch Family Trust's name, wife paid her father a portion of the rent received from the Ellsworth property each month, and regardless of the enforceability of the 2016 separation agreement, it showed that the parties at one time agreed that wife owned 32% of such property. (Because husband does not challenge the admission of the 2016 separation agreement into evidence, we do not consider whether it was inadmissible under CRE 408.)

¶ 23    Husband also argues that the court's findings regarding the Ellsworth property were clearly erroneous because the parties reported 100% of the rental income generated from the Ellsworth property on the tax returns they filed jointly during the marriage. But husband admitted that wife "paid her dad . . . every month

after [the parties] collected" rent from the Ellsworth property. The record indicates that wife's father was a beneficiary of the Arch Family Trust. Husband's concession undercuts his argument that wife owned 100% of the Ellsworth property.

¶ 24    In addition, husband attacks the court's findings regarding the Ellsworth property because, even though his "attorney repeatedly asked for documentation to verify" that wife owned a 32% ownership interest in the Ellsworth property, wife never provided such documentation. But husband does not point to any place in the record where he brought this discovery dispute to the court's attention. "Defenses and objections raised for the first time on appeal are not properly before this court and may not be considered by us, as they are deemed to have been waived." *In re Marriage of Christen*, 899 P.2d 339, 344 (Colo. App. 1995). Thus, we will not consider the alleged discovery dispute that husband asserts for the first time on appeal.

¶ 25    For these reasons, we hold that the court correctly determined that wife owned a 32% interest in the Ellsworth property and that the property's marital value was $85,128.

### 3. The Court Did Not Abuse Its Discretion by Not Awarding Husband the Value of His Premarital Interest in the Aberdeen Property

¶ 26    We next turn to the first of the parties' disputes regarding the Aberdeen property — whether the court erred by not awarding husband the value of his premarital interest in the Aberdeen property.

¶ 27    "In general, the court has broad discretion to determine an equitable division of the marital assets and debts, and we won't disturb its decision absent a showing that the court abused that discretion." *In re Marriage of Capparelli*, 2024 COA 103M, ¶ 7, 561 P.3d 417, 421.

¶ 28    The critical evidence regarding this issue was husband's transfer of title from sole ownership of the Aberdeen property to joint ownership with wife. The record showed that husband purchased the Aberdeen property in January 2006, the parties married in December of that year, and husband changed the title to joint ownership in June 2007. (We note that the court incorrectly said that the Aberdeen property became marital property six months after *husband purchased it*. The record shows that the property became marital six months after *the parties married*. The

court's misstatement, however, does not affect its conclusion that the evidence did not support husband's argument that he had a $121,926 separate interest in the Aberdeen property.)  The Aberdeen property was the parties' primary marital residence.

¶ 29     The parties stipulated on September 5, 2023, that the Aberdeen property had an appraised value of $589,000 as of the date of the marriage and a present appraised value of $1,269,000.

¶ 30     The court disagreed with husband that it should award him his premarital interest in the Aberdeen property, found a marital value of $926,360, and awarded the property to wife.

¶ 31     Section 14-10-113(7)(a), C.R.S. 2024, says,

> For purposes of [the division of marital property], except with respect to gifts of nonbusiness tangible personal property, gifts from one spouse to another, whether in trust or not, shall be presumed to be marital property and not separate property.  This presumption may be rebutted by clear and convincing evidence.

"[W]hen one spouse causes title to be placed jointly with the other spouse a gift is presumed and the burden to show otherwise is upon the donor." *In re Marriage of Moncrief*, 535 P.2d 1137, 1138 (Colo. App. 1975).

11

¶ 32    The record shows that, at the time of the permanent orders hearing, the Aberdeen property was titled in the names of both parties as joint owners, and the parties maintained it with marital funds. We presume that husband gifted an interest in the Aberdeen property to wife when he caused title to be placed jointly with wife, and it then became marital property. *See Marriage of Moncrief*, 535 P.2d at 1138.

¶ 33    Husband neither addresses *Marriage of Moncrief* nor cites any evidence to defeat the presumption that, by causing title to the Aberdeen property to be placed jointly with wife, he intended to effect a gift to the marital estate. *See In re Marriage of Stumpf*, 932 P.2d 845, 848 (Colo. App. 1996) (concluding that, "in the absence of appropriate evidence that the property was excluded from being marital property by a valid agreement of the parties," a transfer during the marriage from one spouse's sole ownership to joint tenancy "must be understood as evidencing an intention to transfer the property to the marital estate"); *see also Marriage of Capparelli*, ¶ 16, 561 P.3d at 423.

¶ 34    For these reasons, we conclude that the court did not abuse its discretion by not awarding husband his premarital interest in the Aberdeen property.

### 4. The Court Did Not Abuse Its Discretion by Ordering the Parties to Equally Divide the HELOC

¶ 35    Our determination that the Aberdeen property was marital property informs our analysis of the court's decision to equally divide the HELOC.

¶ 36    A "court should not assign marital liabilities disproportionately to one spouse," but such rule "cannot be read to require a mathematically equal division of marital debt." *In re Marriage of Wright*, 2020 COA 11, ¶ 9, 459 P.3d 757, 760. Instead, the "distribution must be just and equitable" but not "necessarily equal." *In re Marriage of McGinnis*, 778 P.2d 281, 284 (Colo. App. 1989). "In reviewing a trial court's division of property, we recognize that the trial court has great latitude to effect an equitable distribution based upon the facts and circumstances of each case." *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001).

¶ 37    Because the HELOC was jointly titled, the court found it was a marital debt and ordered the parties to split it equally.

¶ 38    Husband contends that the court abused its discretion by ordering the parties to split the HELOC, but he does not provide any supporting evidence. Rather, the record shows that the HELOC was the only contested debt that the court ordered the parties to divide equally. For example, the court rejected wife's request to consider wife's loan from her parents as marital debt because the evidence was "insufficient to establish that [debt] as a loan."

¶ 39    In addition, husband argues that splitting the HELOC equally was inequitable. The record shows, however, that the court did not assign marital liabilities disproportionately to husband. The reply spreadsheet illustrates that the court's equal split of the HELOC was equitable in light of the court's designation of $2,188,070.25 in assets as husband's separate property and $161,306 as wife's separate property. Further, the parties waived spousal maintenance, indicating that each party had sufficient property to satisfy his or her respective reasonable needs. *See In re Marriage of Bartolo*, 971 P.2d 699, 701 (Colo. App. 1998).

¶ 40    Because the Aberdeen property was joint property and the HELOC was jointly titled, the court did not clearly err by finding

that the HELOC was a marital debt and did not abuse its discretion by ordering the parties to divide it equally.

### B. Wife's Arguments in Her Cross-Appeal

#### 1. The Court Erred by Using a Negative Value for Account 7021 in Dividing the Marital Property

¶ 41 We next turn to wife's argument that the court erred by considering the post-marital decrease in the value of account 7021 in determining the property distribution.

¶ 42 "We give deference to the court's findings of fact but review de novo its application of governing legal standards and legal conclusions." *In re Marriage of Connerton*, 260 P.3d 62, 65 (Colo. App. 2010).

¶ 43 Account 7021 was husband's separate property because he inherited it during the marriage. *See* § 14-10-113(2)(a) (explaining that, although "marital property" is "all property acquired by either spouse subsequent to the marriage," property "acquired by gift, bequest, devise, or descent" is separate property).

¶ 44 A court must not consider the post-marital decrease in the value of separate property when valuing the marital estate. *In re Marriage of Burford*, 950 P.2d 682, 685 (Colo. App. 1997). Once the

15

court has determined the value of the marital estate, it should "consider whether the overall value of the spouse's entire 'separate property' has been subject to an increase or decrease in value, or whether that property has been depleted for marital purposes, so as to determine an equitable and just division of the marital estate." *Id.*

¶ 45     In the permanent orders, the court said,

> As to [account 7021], all premarital value to [h]usband, [its] lost value, down approximately $55,000, which, contrary to [w]ife's assertion, I believe should be offset, as that loss accrued during the marriage, so it is negative marital value, if you will.  So $55,000 from the 7021 account shall be assessed in the total values we're dealing with.

We agree with wife that the court erred by considering account 7021's decrease in value when valuing the marital estate.  *See id.* The court may nonetheless consider such decrease in value after it has otherwise divided the marital property.  *See id.*

¶ 46     Husband asserts, without explanation or analysis, that *Marriage of Burford* does not apply to retirement accounts, such as account 7021.  But he does not develop this argument; therefore, we do not consider it on the merits.  *See In re Marriage of Wiggs,*

16

2025 COA 10, ¶ 45, 566 P.3d 1032, 1041 (declining to consider undeveloped argument).

¶ 47     Because we conclude that the court erred by considering account 7021's $55,000 post-marital decrease in value when it valued the marital estate, we remand for the court to recalculate the marital estate's value without considering account 7021's diminution in value.

## 2.     The Court Erred by Finding There Was No Marital Interest in the Appreciation in the Value of the Arizona Property

¶ 48     Wife argues that, contrary to the court's reasoning, her execution of a quitclaim deed to enable husband to refinance the Arizona property did not result in a waiver of her marital interest in such property's appreciation in value.  We agree.

¶ 49     Husband inherited the Arizona property during the marriage. It was separate property at the time he acquired it. § 14-10-113(2)(a).  Wife argued that the Arizona property's $640,500 appreciation in value was marital property under section 14-10-113(1)(d), which explains that the court must consider "[a]ny increases . . . in the value of the separate property of the spouse during the marriage" when dividing the marital property.  Husband

17

responded that, because wife had "waived her interests in the property years ago via quitclaim deed," there was "no marital interest" in the Arizona property.

¶ 50 The parties do not dispute that wife executed the quitclaim deed to facilitate husband's refinancing of the Arizona property. The quitclaim deed states that wife "has no right, title, interest, claim or lien of any kind or nature whatsoever in, to or against" the Arizona property.

¶ 51 In general, any "appreciation of a spouse's separate property during the marriage is marital property subject to equitable division." *In re Marriage of Krejci*, 2013 COA 6, ¶ 13, 297 P.3d 1035, 1038. A spouse can overcome the marital property presumption by establishing that the parties agreed to exclude that property from the marital estate. *See* § 14-10-113(2)(d) ("Property excluded by valid agreement of the parties" is not marital property.); *Marriage of Bartolo*, 971 P.2d at 700.

¶ 52 The "valid agreement[s]" referenced in section 14-10-113(2)(d) are limited to "marital agreement[s]." *In re Marriage of Blaine*, 2021 CO 13, ¶¶ 18-21, 28, 480 P.3d 691, 695-96. A "[m]arital agreement" is "an agreement between spouses who intend to remain

married which affirms, modifies, or waives a marital right or obligation during the marriage or at legal separation, marital dissolution, death of one of the spouses, or the occurrence or nonoccurrence of any other event." § 14-2-302(2), C.R.S. 2024. "A . . . marital agreement must be in a record and signed by both parties," § 14-2-306, C.R.S. 2024, and is ineffective unless signed by both parties, § 14-2-307, C.R.S. 2024. Thus, a document signed by only one spouse is not a "[m]arital agreement." *See* § 14-2-302(2). For this reason, in *Marriage of Blaine*, the supreme court decided that "a spouse's conveyance of his interest in a home through an interspousal transfer deed . . . [does not] automatically overcome[] the presumption of marital property." *Marriage of Blaine*, ¶ 1, 480 P.3d at 692.

¶ 53 The supreme court held in *Marriage of Blaine* that the wife's interspousal transfer deed was not a "marital agreement" because both parties had not signed it. *Id.* at ¶¶ 20-21, 480 P.3d at 695. The court underscored that "a party may overcome the [statutory] marital property presumption . . . only through the four exceptions set forth in section 14-10-113(2)(a)-(d)." *Id.* at ¶ 28, 480 P.3d at 696. The supreme court noted that section 14-10-113 does not

contain an exception for "deed[s] conveying [the marital] property from one spouse to the other as separate property" even if "there is also evidence of the conveying spouse's intent to exclude the property." *Id.* at ¶ 21, 480 P.3d at 695 (quoting *In re Marriage of Blaine*, 2019 COA 164, ¶ 14, 486 P.3d 358, 361).

¶ 54    In addition, *Marriage of Bartolo* does not support husband's argument that, by executing the quitclaim deed, wife waived her marital interest in the Arizona property's appreciation in value. In that case, the husband contended that the court "erred in finding that he had made a gift to wife by conveying his interest in [a] residence to her." *Marriage of Bartolo*, 971 P.2d at 700.

¶ 55    The division disagreed and concluded that the husband had overcome the marital property presumption. However, the division rested its conclusion on the district court's finding, by "clear and convincing" evidence, that the husband had intended to make a gift to the wife. *Id.* at 700-01.

¶ 56    The court did not make such finding in this case. Rather, contrary to *Marriage of Bartolo*, the court concluded that the quitclaim deed, which wife alone executed, without more, supported

husband's argument that the Arizona property's appreciation in value was not marital.

¶ 57     We conclude that the court erred because the quitclaim deed was not a marital agreement, as only wife signed it.  *See* § 14-2-302(2); *Marriage of Blaine*, ¶ 21, 480 P.3d at 695. Accordingly, on remand, the court must include the $640,500 appreciation in the value of the Arizona property in its allocation of marital property.

### 3.     Wife's Request for Attorney Fees and Costs

¶ 58     Wife requested that we order husband to contribute to her appellate attorney fees and costs under C.A.R. 39.1 and section 13-17-102.  We deny her request.

¶ 59     Husband's argument in his opening brief regarding account 2715 did not lack substantial justification because he filed it before the court addressed the typographical error identified in the Rule 60(a) motion.  The court mooted husband's argument when it corrected the marital value of account 2715 in the permanent orders.  Therefore, husband's argument regarding account 2715 did not, as wife contends, "needlessly expand[] the time and fees [she] incurred in this appeal."

## III.    Disposition

¶ 60    The judgment is affirmed in part, reversed in part, and remanded for the court to recalculate the division of marital property without considering account 7021's diminution in value and to include the appreciation in the value of the Arizona property as marital property in its property allocation.

JUDGE LUM and JUDGE TAUBMAN concur.