25CA0670 Marriage of Mathiesen 01-29-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0670
Weld County District Court No. 23DR30320
Honorable Jayme L. Muehlenkamp, Judge

In re the Marriage of

Jessica Mathiesen,

Appellee,

and

Michael Mathiesen,

Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE MOULTRIE
Dunn and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 29, 2026

SM Family Law, LLC, Sangeetha Mallavarapu, Boulder, Colorado, for Appellee

The Law Firm of Brian DeBauche, Brian DeBauche, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Michael Mathiesen (husband) appeals the part of the property division concerning the equity in the marital home entered in connection with the dissolution of his marriage to Jessica Mathiesen (wife).  We affirm.

## I.    Background

¶ 2    Husband and wife were married in June 2008 and had a child together about two years later.  The parties both contributed to the marriage in different ways: Husband financially supported the family, and wife primarily took care of the home and the parties' child.[1]

¶ 3    In 2014, the parties purchased a home for $255,000.  Only husband's name appeared on the mortgage and deed.  The down payment for the home totaled $20,000, and husband's employment was the primary source of those funds.  The parties separated in 2018, and wife filed a petition for dissolution of marriage in 2023.  In February 2025, the district court held a permanent orders hearing at which the parties and a joint expert witness testified.  The joint expert witness was a residential real estate appraiser who

---

[1] The parties have one shared child, but wife has another child not of the marriage.

appraised the marital home and testified that the home's value was $590,000.

¶ 4 Husband disputed the appraiser's value of the marital home and introduced into evidence tax assessments from 2018 and 2024. He requested the court to value the home as of 2018 — the year the parties separated — and asserted the value of the home was $347,354 based on the 2018 tax assessment.

¶ 5 After the hearing, the court entered a decree dissolving the parties' marriage and permanent orders dividing the marital property and debts.

¶ 6 The court found, among other things, that

- the home was marital property and was the parties' biggest asset;

- the parties "equally contributed toward[] the acquisition of the [home]" through husband's financial support and wife's homemaking and caretaking;

- the taxable values of the home listed on the property tax assessments were "not at all equivalent to the value of the home";

- the home's value was $590,000;

- the home might have been, based on the appraiser's findings, appraised at a higher value had it been properly maintained while solely under husband's physical control;

- "[a]ny increase in the home's value [was] solely due to market conditions";

- the parties had similar financial circumstances, although husband had recently inherited a $55,000 IRA; and

- it was fair and equitable to equally divide the home's equity under the totality of the circumstances.

¶ 7    Husband appeals the court's equal division of the home's equity.  For the reasons discussed below, we affirm the judgment.

## II.    Applicable Legal Principles

¶ 8    In a dissolution of marriage proceeding, the court must divide marital property as it deems just.  § 14-10-113(1), C.R.S 2025. "[M]arital property" is all property acquired by either spouse after the date of marriage except property described in the four statutory exceptions set forth in section 14-10-113(2)(a)-(d).  § 14-10-113(2); *see In re Marriage of Blaine*, 2021 CO 13, ¶ 3.

¶ 9     When dividing marital property, the court considers all relevant factors under section 14-10-113(1), including each spouse's (1) contribution to the acquisition of the marital property; (2) awarded property; (3) economic circumstances; and (4) increased, decreased, or depleted separate property. § 14-10-113(1)(a)-(d); *see In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001). "The property division must be equitable, but not necessarily equal." *In re Marriage of Wright*, 2020 COA 11, ¶ 3. And "[t]he key to an equitable distribution is fairness, not mathematical precision." *In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo. 1988).

¶ 10     "[T]he trial court has great latitude to effect an equitable distribution based upon the facts and circumstances of each case," so "an appellate court must not disturb a trial court's decision regarding division of property unless there has been a clear abuse of discretion." *Balanson*, 25 P.3d at 35. A court abuses its discretion when its ruling misconstrues or misapplies the law or is manifestly arbitrary, unreasonable, or unfair. *In re Marriage of Evans*, 2021 COA 141, ¶ 25.

III. The Court Didn't Abuse Its Discretion When It Equally Divided the Marital Home's Equity

¶ 11    As an initial matter, it's undisputed that the home was acquired after the parties were married and that the funds used to purchase the home were marital funds.[2]  Thus, the home is marital property even though it was titled and financed in husband's name alone.  *See* § 14-10-113(2).

¶ 12    Husband argues that the district court erred by awarding each party an equal share of the marital home's equity.  He argues that the court didn't adequately consider his contribution to the acquisition of the home, the length of time the parties had been separated, and the parties' financial circumstances when the permanent orders hearing occurred.  We disagree for three reasons.

¶ 13    First, the record demonstrates that the court expressly considered husband's financial contributions to the acquisition of the home.  Nevertheless, husband asserts that "he was the primary

---

[2] Husband testified that he received about $1,000 of the $20,000 down payment from his mother.  Husband doesn't argue now, nor did he argue in the district court, that any gifted funds from his mother should be considered separate property.  And husband affirmed that the moneys used to pay for the home were marital funds.

breadwinner during the marriage," and "[w]ithout his contributions, the parties would not have been able to purchase the home in 2014." Husband seemingly asserts that his financial contributions were more meaningful than wife's contributions when considering the parties' ability to buy and maintain the marital home. He presented the same argument to the district court; indeed, the court acknowledged that husband was the primary financial provider and that the parties had used husband's income earned during the marriage for the down payment of the home. However, the court also found that husband's financial contributions didn't "negate" wife's contributions to the acquisition of the home because she contributed by homemaking, caretaking, and helping with home improvement projects.

¶ 14    Section 14-10-113(1)(a) explicitly states that one factor the court should consider when dividing marital property, if relevant, is a spouse's contribution as a homemaker. Both parties testified that wife was a homemaker and a caretaker for the parties' child and that she assisted husband with making improvements to the home. And because marital property includes the increased equity in a home acquired after the parties' marriage, *see Rhoades v. Rhoades*,

6

535 P.2d 1122, 1124 (Colo. 1975), the court properly considered wife's contributions to the acquisition of the marital home in its division of the home's equity. Thus, husband hasn't demonstrated that the court abused its discretion when it weighed the parties' contributions to the acquisition of the home; he merely disagrees with the outcome. And we aren't at liberty to reweigh the evidence. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (it is for the district court to determine the weight, probative force, and sufficiency of the evidence and any inferences and conclusions to be drawn therefrom).

¶ 15 Second, we reject husband's argument that the court didn't appropriately consider the impact of the parties' separation on the home's increased value or the length of the parties' separation when determining how to equitably divide the home's equity.

¶ 16 It's true that wife left the home in 2018 and was no longer providing homemaking, while husband continued to pay the mortgage. It's also true that the parties lived together in the home for approximately four years after buying it, while husband lived alone in the home for seven years between the parties' separation and the permanent orders hearing. The court acknowledged these

circumstances and ultimately found that the home's value had increased solely because of the housing market. In so finding, the court noted the negative impact that husband's lack of maintenance of the home had on its value and noted husband's missed mortgage payments, which resulted in a lien on the home. The court thus found that "[h]usband ha[d] not independently contributed in any significant way to any increase in the home's value." The court also considered that wife incurred separate housing costs and expenses during the separation rather than contributing to the home's mortgage or other bills.

¶ 17 Section 14-10-113(5) states that "property shall be valued as of the date of the decree." Although the parties separated in 2018, neither party filed a petition for a legal separation. And wife didn't file the underlying petition for dissolution of marriage until 2023. Thus, the parties' marriage remained intact until the court entered the decree in 2025.

¶ 18 The General Assembly didn't carve out any exceptions for passive appreciation of marital property during a period of separation before the commencement of a dissolution of marriage proceeding. *See* § 14-10-113(3)-(4); *Rhoades*, 535 P.2d at 1124.

And husband hasn't provided any authority supporting his position that the court should have valued the home as of the date of the parties' separation because (1) after wife left the home in 2018, she was no longer providing homemaking, and (2) when the court entered the decree, husband had been paying the mortgage and other bills longer than the period the parties had lived in the home together. Moreover, the authority that husband relies on is misplaced.

¶ 19 Husband relies on *Liggett v. Liggett*, 380 P.2d 673, 675 (Colo. 1963), in support of his argument. In that case, the supreme court affirmed the district court's ruling declining to allocate any marital property to the wife due to the wife's failure to contribute to the marriage or financial resources of the parties. *Id.* Furthermore, the *Liggett* court found that the wife's "addiction and conduct constituted a drain upon the husband to his embarrassment and detriment." *Id.* But *Liggett* predates the General Assembly's adoption of the Uniform Dissolution of Marriage Act, which abrogated fault-based divorce. *See In re Marriage of Franks*, 542 P.2d 845, 849 (Colo. 1975). Moreover, unlike the wife in *Liggett* who "failed during the entire period of the marriage relationship to

9

perform her duties as a wife and a partner in the marriage relationship," 380 P.2d at 675, the court here found that wife "was the main homemaker and child caretaker" and, at times, "travelled with or assisted [h]usband with [his] business." Thus, *Liggett* is distinguishable.

¶ 20 Husband also relies on *In re Marriage of Hunt*, 909 P.2d 525, 542 (Colo. 1995), for the proposition that "economic fault" is applicable in this case. "'Economic fault' is a limited concept which comes into play only in extreme cases such as the spouse's dissipation of marital assets in the contemplation of divorce." *Id.* Husband never argued in the district court, and doesn't argue now, that wife dissipated marital assets in contemplation of the divorce. And we disagree that wife's lack of contribution to the marital home during the parties' separation constitutes an "extreme case[]" such that the economic fault concept should apply. *Id.* at 542-43.

¶ 21 Because the court followed its statutory mandate by valuing the home as of the date of the decree and exercised its discretion by considering the factors in section 14-10-113(1) when dividing the property as described above, we discern no abuse of discretion.

¶ 22    Third, husband argues that the court didn't properly consider the parties' financial circumstances at the time of the permanent orders hearing. Specifically, husband argues that the court didn't consider that wife was sharing housing expenses with her current partner, while he was solely responsible for his own expenses.

¶ 23    The court found that, "[g]enerally, [w]ife's rent cost more than the mortgage on the home," and "[t]he parties [were] situated similarly in terms of financial resources and income. Although [h]usband recently received an inherited IRA of approximately $55,000." Wife testified that, for about one year following the parties' separation, she lived with her mother and didn't pay rent. After that, and until the end of 2024, she lived in an apartment with her two children, paying approximately $1,650 per month in rent. From the end of 2024 until the date of the permanent orders hearing in February 2025, wife had moved in with her partner and had been sharing expenses. The rent at that apartment was $2,200, which meant she was paying approximately $1,100 per month in rent. Conversely, husband was paying approximately $1,553 per month for the mortgage, which included taxes and insurance.

¶ 24 Although wife's rent expense at the time of the hearing was approximately $453 less per month than husband's mortgage payment, husband's argument fails to consider that wife's monthly expenses listed on her sworn financial statement were nearly twice as much as his. Furthermore, husband's inherited IRA, valued at $55,000, was set apart as his separate property, whereas wife had no similar separate property. While the parties' financial circumstances at the time of the permanent orders hearing weren't precisely the same, the court considered the parties' relative monthly incomes and expenses and the value of any separate property when it made its determination that an equal division of the home's equity was fair and equitable. That is what the court was required to do under section 14-10-113(1)(b)-(c). Accordingly, we discern no abuse of discretion.

IV. Wife's Request for Appellate Attorney Fees

¶ 25 Wife argues that husband's appeal is frivolous or groundless because he either cites no authority in support of his arguments or cites inapposite authority and relies on unpublished case law in violation of our policy concerning the citation of unpublished opinions.

12

¶ 26    While husband didn't prevail on his appeal, we deny wife's request for appellate attorney fees because this isn't an exceptional case that warrants such a sanction. *See Mission Denv. Co. v. Pierson,* 674 P.2d 363, 365 (Colo. 1984) ("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights.").

V.    Disposition

¶ 27    The judgment is affirmed.

JUDGE DUNN and JUDGE TAUBMAN concur.