24CA1606 & 25CA0693 Estate of Romero 08-21-2025

COLORADO COURT OF APPEALS

---

Court of Appeals Nos. 24CA1606 & 25CA0693
Adams County District Court No. 21PR4
Honorable Sara S. Price, Magistrate

---

In re the Estate of Mary A Romero, a/k/a Mary Angie Romeo, a/k/a Mary Angelina Romero, a/k/a Marie Angelina Romero, a/k/a Angie Romero, deceased.

Sandra A. Romero,

Appellant,

v.

Matthew Romero, Personal Representative of the Estate of Phillip G. Romero,

Appellee.

---

ORDERS AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Moultrie and Graham*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

---

Joshua Moses, Morrison, Colorado, for Appellant

Solem, Woodward and McKinley, P.C., Zachary F. Woodward, Stephanie T. Schrab, Englewood, Colorado, for Appellee


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In this probate case, Sandra A. Romero appeals the district court magistrate's order removing her as personal representative of Mary A. Romero's estate and ordering her to pay compensatory damages to Mary Romero's and Phillip G. Romero's estates.[1]  She also appeals the magistrate's order awarding attorney fees to Phillip's estate.  We affirm both orders.

## I.     Background

¶ 2     The decedent was survived by her four children: Phillip, Sandra, Steve, and Kenny.  She had nominated Sandra as the executor of her estate in her last will and testament.  The district court appointed Sandra as the estate's personal representative.

¶ 3     About a month after the decedent died, the district court granted Sandra's petitions to become Phillip's emergency guardian and special conservator because he had been in a coma for about two months.  After Phillip recovered several months later, Sandra voluntarily terminated the guardianship and conservatorship.

---

[1] For clarity's sake, we will refer to Mary Romero as the decedent, Mary, or mother, and refer to the other Romeros by their first names.  We don't intend any disrespect by doing so.

¶ 4    But Phillip became suspicious of Sandra's actions as his guardian and conservator.  For instance, Sandra had transferred the title of a pickup truck, titled in his name, to herself for no consideration.  Sandra later explained during the hearing on the motion to remove her as personal representative that her mother had thought Phillip was going to die and therefore gave the truck to her.  Though Sandra testified that her mother and Phillip jointly owned the truck, it was titled in Phillip's name.  And although Sandra transferred the truck's title back to Phillip after he recovered, he remained concerned that she had done similar things with other property of his while he was in a coma.

¶ 5    About two years after his coma, Phillip died.  The district court appointed Matthew, Phillip's only son, as the personal representative of Phillip's estate.  Sandra prevented Matthew from accessing vehicles belonging to Phillip's estate, and she threatened to sell them unless Matthew paid her "storage fees" for holding the vehicles.  Matthew also found out that Sandra was trying to sell the decedent's house, in which Phillip had owned a three-quarters interest (after paying Steve and Kenny for their quarter interests).

¶ 6     After reviewing Phillip's estate and learning of Sandra's actions as the decedent's personal representative, Matthew, on behalf of Phillip's estate, petitioned the court for the immediate suspension of her role as personal representative of the decedent's estate and for an order directing Sandra to deposit money belonging to the decedent's estate into the court registry, permanently removing Sandra as personal representative for breach of fiduciary duty, and surcharging and assessing sanctions against Sandra for her breaches of her fiduciary duty.  Much of the petition focused on Sandra's alleged taking of all the decedent's estate's assets, notwithstanding that Mary's will didn't say how those assets should be distributed, and, therefore, the assets were to be distributed equally among the four siblings.  As well, the petition claimed that Sandra had paid herself from the estate for unnecessary or nonexistent services.  The district court immediately suspended Sandra as personal representative and ordered a hearing to be set on the remainder of Matthew's petition.

¶ 7     At the hearing, the magistrate assigned to the case heard testimony from Sandra (appearing pro se), Matthew, and other witnesses.  After both Sandra (still appearing pro se) and Matthew

(through counsel) submitted written closing arguments, the magistrate entered a written order permanently removing Sandra as the decedent's personal representative, surcharging and sanctioning her for breaching her fiduciary duty, and awarding Phillip's estate attorney fees. The magistrate later determined the reasonable amount of attorney fees awarded.

## II. Appeal of the Removal Order

¶ 8 Sandra contends that the magistrate (1) misinterpreted the decedent's will; (2) improperly excluded evidence based on a misinterpretation of the "Dead Man's Statute"; and (3) exhibited actual bias against her. We consider and reject these contentions in turn.

### A. Construction of Decedent's Will

¶ 9 Sandra contends that the magistrate erroneously construed the decedent's will as ambiguous with respect to distribution of the estate's assets when, she says, it unambiguously devised to her the decedent's entire estate, including full ownership of the decedent's house and the truck. We conclude that Sandra not only failed to preserve this contention, she also waived it.

¶ 10    Matthew argues that Sandra failed to preserve this issue for appeal because she never raised it with the magistrate.  In response, Sandra seemingly concedes that she didn't preserve the issue but asks us to review her unpreserved contention because addressing it is "necessary to prevent manifest injustice."  *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 73.

¶ 11    We generally don't address issues raised for the first time on appeal.  *Gestner v. Gestner*, 2024 COA 55, ¶ 18.  But we may, in our discretion — "'very rarely' and only 'where necessary to prevent manifest injustice'" — review unpreserved claims of error.  *Ramstetter*, ¶ 73 (quoting *JW Constr. Co. v. Elliott*, 253 P.3d 1265, 1271 (Colo. App. 2011)); *see Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1008-09 (Colo. 2008) ("[A]ppellate courts also have the discretion to notice any error appearing of record, whether or not a party preserved its right to raise or discuss the error on appeal." (citing C.A.R. 1(d))).

¶ 12    We aren't persuaded that reviewing Sandra's unpreserved contention on the merits is necessary to prevent manifest injustice.  Nothing in the record shows the sort of extraordinary circumstances that would justify overlooking Sandra's failure to

preserve the issue. To the contrary, addressing the merits of the issue would subvert justice because she explicitly waived it.

¶ 13    "Waiver is the intentional relinquishment of a known right or privilege." *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984). Waiver extinguishes error and precludes appellate review, even for plain error. *People v. Rediger*, 2018 CO 32, ¶ 40.

¶ 14    Before the hearing, Sandra and Matthew filed a joint stipulation indicating the parties' stipulated points of agreement.[2] Therein, Sandra stipulated that "[the] [d]ecedent's will does not describe the distributions of the assets in her estate. When a will fails to dispose of assets, the intestate statutes control." She also stipulated that "[the decedent's] assets would be distributed into four shares, one for each child." In doing so, she made an unequivocal judicial admission that the will didn't devise all the decedent's assets to her. *Calvert v. Mayberry*, 2019 CO 23, ¶ 18 ("A judicial admission is a formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which

---

[2] At the parties' request, the magistrate made the joint stipulation an order of the court.

there is no real dispute." (quoting *Kempter v. Hurd*, 713 P.2d 1274, 1279 (Colo. 1986))); *accord D.R. Horton, Inc.-Denver v. Bischof & Coffman Constr., LLC*, 217 P.3d 1262, 1276 (Colo. App. 2009). "Judicial admissions are binding on the party who makes them . . . ." *Salazar v. Am. Sterilizer Co.*, 5 P.3d 357, 365 (Colo. App. 2000); *accord People ex rel. State Eng'r v. Sease*, 2018 CO 91, ¶ 28. And they "continue to have effect for a subsequent part of the same proceedings." *Kempter*, 713 P.2d at 1279; *see also In re Marriage of Blaine*, 2019 COA 164, ¶¶ 24-25 (because party did not ask the district court to relieve him from a stipulation, the appellate court would not address an issue subject to that stipulation), *rev'd on other grounds*, 2021 CO 13.

¶ 15    In asking us to disregard this judicial admission, Sandra points only to the fact that she represented herself at the hearing.[3] But a self-represented party is subject to "the same rules, procedures, and substantive law applicable to a licensed attorney." *People v. Romero*, 694 P.2d 1256, 1266 (Colo. 1985); *see also Manka v. Martin*, 614 P.2d 875, 880 (Colo. 1980).

---

[3] Sandra was represented by several lawyers at various points in the proceedings below.

7

¶ 16    We therefore decline to address the merits of Sandra's contention challenging the magistrate's construction of the decedent's will.

## B.    Dead Man's Statute

¶ 17    Next, Sandra contends that the magistrate erred by excluding "crucial" testimony of the decedent's last wishes under the "Dead Man's Statute."  Specifically, the magistrate excluded Sandra's testimony that Mary told her on the way to the hospital that if she (Mary) died, her money should be used to pay bills and funeral expenses; whatever assets were left, including the truck, belonged to Sandra.

¶ 18    The statute, as codified in section 13-90-102, C.R.S. 2024, bars evidence of oral statements made by a decedent unless one of four exceptions applies.  Only one of those exceptions is relevant to this case: a court may admit testimony of the decedent's statement if the evidence is "corroborated by material evidence of a trustworthy nature."  § 13-90-102(1)(b).

¶ 19    Sandra argues that (1) the magistrate misinterpreted section 13-90-102; (2) her testimony was otherwise admissible under CRE 803(2), 803(3), and 807; (3) Matthew's counsel elicited

8

hearsay testimony from witnesses, and therefore Sandra should have been allowed introduce her hearsay testimony too; and (4) her testimony was admissible under section 13-90-102(1)(b) because it was corroborated by material evidence of a trustworthy nature.[4] We conclude that Sandra failed to preserve any of these arguments.

### 1. Additional Facts

¶ 20     On the night before her death, the decedent suffered from pain at her house and called Sandra for help. Sandra arrived, called for an ambulance, and rode with the decedent to the hospital. On that drive, Sandra says the decedent told her that if she died, Sandra should pay the decedent's bills and funeral expenses; the rest of her assets would belong to Sandra.

---

[4] Sandra also asserts that the magistrate ignored her attorney-client privilege objection to Arlene Barringer's testimony. Barringer was the court-appointed attorney who represented Phillip during and after his coma. But Sandra doesn't say what that has to do with the magistrate's ruling on the Dead Man's Statute; she merely complains that the magistrate enforced the statute while not enforcing attorney-client privilege. We don't consider such undeveloped and unsupported arguments. *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, *aff'd*, 2021 CO 56.

¶ 21    At the hearing, Matthew's counsel asked the magistrate to exclude any testimony that would violate section 13-90-102.  The magistrate agreed to exclude any such testimony.

¶ 22    In response, Sandra said, "The dead man thing, that is really vital to my case."  The magistrate replied,

> Well, it's the law, and it's my job to uphold the law.  So I'm going to have to enforce that rule.  If anybody has interest in [the decedent's] estate or Phillip's estate, they can't testify as to what Phillip or [the decedent] said.  Under the probate code, the way people make their last wishes known is by executing a last will and testament.  If they haven't executed a last will and --

¶ 23    Sandra interjected, "She was in the ambulance, how could she make a last will?  She was in the ambulance at the time when she told me."  The magistrate explained, "In the State of Colorado, the way people let their last wishes known is in writing in a document. . . .  Oral statements of what somebody wants for their last wishes doesn't make it legal, essentially."

¶ 24    Sandra asked, "Doesn't matter then what somebody tells you?  Your mother?"  The magistrate replied, "If your mother told you what she wanted in an ambulance and then passed away, then, no,

it doesn't. . . . Listen folks, I know you may not like the law, but I didn't write it, okay? I just have to uphold it."

## 2. Analysis

¶ 25    On appeal, Sandra contends that she preserved each of her arguments based on her colloquy with the magistrate, two exhibits admitted at the hearing, and her written closing argument. We disagree.

¶ 26    While we don't require "talismanic language" to preserve an issue for appeal, the district court must have had "an adequate opportunity to make findings of fact and conclusions of law" on the issue. *Martinez v. People*, 2015 CO 16, ¶ 14 (quoting *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004)).

¶ 27    The magistrate in this case had no such opportunity. None of Sandra's contentions on appeal appear in the record. She didn't object to the magistrate's interpretation of the statute after the magistrate explained her reasoning in detail and never objected on the basis she raises on appeal. Sandra never argued that other rules of evidence made the evidence admissible. She never objected to the supposed hearsay testimony she claims Matthew's attorney elicited, much less argued that this gave her license to admit her

11

own hearsay.  And she never argued that the exception under section 13-90-102(1)(b) applied.[5]

¶ 28    We also observe that, given Sandra's stipulation, discussed above, none of her arguments on appeal concerning the Dead Man's Statute are viable.  This is so because she claims the evidence of what the decedent told her was relevant to show that she was entitled to all the decedent's estate under the will.  As discussed, she stipulated to the contrary.

## C.    Judicial Bias

¶ 29    Next, Sandra contends that we should reverse the order because the magistrate showed actual bias against her throughout the hearing.  We disagree.

---

[5] As to this last issue, Sandra asserts that the corroborating evidence includes the decedent's will, Kenny's "testimony," and other documents.  But Sandra never asked the magistrate to consider this supposed evidence in connection with the Dead Man's Statute.  We also observe that one of the supposed corroborating pieces of evidence — a letter from Kenny prepared on January 19, 2025, more than four months after Sandra appealed the judgment — wasn't presented to the court.  She attaches that letter to her opening brief as Exhibit A.  Sandra's counsel's representation in the reply brief that "Exhibit A was presented to the trial court" is false.  *See* Colo. RPC 3.3(a), (c) (a lawyer shall not knowingly make a false statement of fact to the tribunal).  Because Exhibit A doesn't appear in the record, we strike it from her brief and don't consider it.  C.A.R. 10, 28.

12

### 1. Applicable Law and Standard of Review

¶ 30    The Code of Judicial Conduct requires disqualification of a judge when (1) the judge's involvement with a case creates the appearance of impropriety or (2) the judge has a personal bias for or against a party. *People in Interest of A.G.*, 262 P.3d 646, 650-51 (Colo. 2011); *see* C.J.C. 2.11(A).

¶ 31    "[T]here is a difference between a judge who has the appearance of impropriety and a judge who has actual bias." *People v. Jennings*, 2021 COA 112, ¶ 18. "A judge who is disqualified based on an appearance of impropriety may be able to act impartially, but the judge is disqualified nonetheless because a reasonable observer might have doubts about the judge's impartiality." *A.G.*, 262 P.3d at 650. Actual bias exists when, in all probability, a judge will be unable to deal fairly with a party. *People in Interest of A.P.*, 2022 CO 24, ¶ 28. While both an appearance of impropriety and actual bias are grounds for recusal, only actual bias allows us to question the result of the proceedings. *Id.*[6]

---

[6] Sandra doesn't contend that there was an appearance of impropriety warranting reversal.

¶ 32    To disqualify a judge for actual bias, a party must show that the judge had a "substantial bent of mind" against her. *Jennings*, ¶¶ 19-20, 28 (quoting *People v. Drake*, 748 P.2d 1237, 1249 (Colo. 1988)).  Mere speculative statements and conclusions aren't sufficient; the record must clearly show the judge's alleged bias. *Id.*

¶ 33    "[A] claim of actual bias may be reviewed on appeal even where the parties did not properly raise the issue in the trial court." *Id.* at ¶ 21.  We review a claim of actual bias de novo. *Id.* at ¶ 27.

### 2.    Analysis

¶ 34    Sandra's argument on this issue consists mainly of hyperbolic, conclusory assertions, many of which are based on mischaracterizations of the record.  With one exception, we conclude that they are completely without merit.[7]

---

[7] In connection with her claim of actual bias, Sandra's opening brief cites an unpublished decision of this court, which violates our formal policy prohibiting parties from citing such cases (with exceptions that don't apply in this case).  *See* Colo. Jud. Branch, *Court of Appeals Policies, Policy Concerning Citation of Opinions Not Selected for Official Publication* (2025), https://perma.cc/Z88K-5U7F.  We trust that this violation of our policy won't be repeated.

### a. Refusal to Postpone the Hearing

¶ 35    Sandra argues that the magistrate unfairly forced her to proceed without an attorney when the magistrate refused her mid-hearing request to postpone the hearing. We disagree.

¶ 36    Sandra didn't move for a continuance before the hearing. But during the hearing, she asked the magistrate to postpone the hearing so that she could retain counsel. The magistrate refused because Sandra had three months to retain new counsel after her last attorney had withdrawn and the hearing had been set for several months. Matthew's counsel also noted that Sandra's last attorney was the fourth attorney to represent her in the case and represented that Matthew's witnesses were present and prepared to testify.

¶ 37    Nothing about the magistrate's ruling shows any actual bias. Rather, the magistrate's ruling is supported by the record and was well within her discretion to manage the case. *See People v. Travis*, 2019 CO 15, ¶ 16; *Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 976 (Colo. 1999) (whether to grant a request for a continuance is left to the court's discretion; the movant must show "good cause" (quoting C.R.C.P. 121, § 1-11)).

### b. Exclusion of Decedent's Statement

¶ 38 Sandra argues that the magistrate improperly excluded her testimony of what the decedent allegedly told her on their way to the hospital. But, as discussed above, the magistrate did so based on Matthew's counsel's objection under the Dead Man's Statute and Sandra failed to alert the court to any possible exception to the statute's general rule. And any such testimony would have been intended to contradict Sandra's pre-hearing stipulations. *See A.P.,* ¶ 32 ("[A]dverse legal rulings by a judge are unlikely to provide grounds for a bias claim, as they are proper grounds for appeal, not for recusal." (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994))).

¶ 39 Relatedly, Sandra asserts that the magistrate exhibited bias by disallowing her hearsay testimony while allowing hearsay testimony in response to questions by Matthew's counsel. But the record shows that the court sustained her only hearsay objection. The magistrate didn't exhibit bias by failing to step in when Sandra didn't object to questions by Matthew's counsel; indeed, had the magistrate done so, the magistrate arguably would have taken on the role of advocate, departing from her role as an impartial arbiter.

16

*See Romero*, 694 P.2d at 1266; *Loomis v. Seely*, 677 P.2d 400, 402 (Colo. App. 1983) ("A judge may not become a surrogate attorney for a *pro se* litigant.").

### c. Limitation on Cross-Examination

¶ 40    Sandra also argues that the magistrate improperly limited her cross-examination of a witness. Again, this argument is meritless.

¶ 41    Sandra asked Matthew about whether she may have paid Phillip in cash, insinuating that Phillip had lost that money gambling. Matthew responded by accusing Sandra of writing illicit checks to her husband and son. The magistrate stopped their argument because the dispute wasn't relevant to the issues to be decided at the hearing.

¶ 42    A court has "substantial discretion to limit cross-examination if the questioning is irrelevant." *People in Interest of E.G.*, 2015 COA 18, ¶ 28; *aff'd*, 2016 CO 19. Sandra doesn't explain how the magistrate abused her discretion by terminating this exchange, much less show that the magistrate's ruling demonstrates any bias against her.

#### d. Magistrate's Use of the Word "We"

¶ 43    After sustaining Sandra's hearsay objection to a question that Matthew's counsel posed to a witness, the magistrate said, "We got to rephrase the question."  Sandra asserts that the magistrate's use of the word "we" somehow shows that the magistrate viewed herself as "part of [Matthew's] team."  The context, however, doesn't reasonably permit of such an inference.  *See United States v. Wilson*, No. 21-1099, 2022 WL 1184043, at *11 (10th Cir. Apr. 21, 2022) (unpublished opinion) (a defendant's speculation that a judge "was acting as a co-prosecutor" because the judge used the pronouns "we" and "us" didn't establish actual bias).

#### e. Limitation of Recess

¶ 44    About halfway through the hearing, the magistrate asked the parties, "Do we want to take a few minutes for a break?"  Sandra replied, "Can I request a fifteen minute [break]?  I'm over my head."  Matthew's counsel said he didn't need a break.  The magistrate granted Sandra a ten-minute recess.

¶ 45    Sandra contends that the magistrate was biased against her because she gave her five minutes less than what she asked for.  We disagree.  The magistrate simply wanted to keep the proceedings

moving. And, contrary to Sandra's characterization of the magistrate's statements, the record doesn't show that in making this ruling the magistrate gave her a "lecture." The magistrate only expressed a desire to "keep going and . . . get through this as fast as we can."

### f. Admitting Exhibit M

¶ 46 Gary Schwartz, Matthew's forensic accounting expert witness, testified at the hearing. During his testimony, Matthew's counsel introduced into evidence several bank statements and other business records. On counsel's motion, the magistrate admitted Exhibits L, M, N, and O into evidence. Sandra didn't object. Immediately thereafter, Matthew's counsel moved to admit Exhibit P. The magistrate did so but then said (incorrectly) that Exhibit M hadn't been admitted. Matthew's counsel reminded the court that Exhibit M was one of the bank statements (that had already been admitted). The court said, "We can admit Exhibit M."

¶ 47 Sandra characterizes this exchange as showing that the magistrate entered Exhibit M without prompting, to Matthew's benefit. This is a mischaracterization of the record.

### g. Exclusion of Kenny's Testimony

¶ 48    At the beginning of the hearing, Matthew's counsel requested a sequestration order for anyone whom the parties intended to call as witnesses.  The magistrate asked both Matthew's counsel and Sandra whether they planned to call Kenny as a witness.  Both said they didn't plan to call him.  So the court allowed Kenny to remain in the courtroom during the hearing.

¶ 49    Then, at the end of the hearing, Sandra attempted to call Kenny as a witness.  Matthew's counsel objected on the bases that Kenny had seen and heard the entire day of testimony and that allowing him to testify would violate the magistrate's sequestration order.  The magistrate agreed, and Sandra said, "I forgot. . . .  Okay.  No witnesses then."

¶ 50    The magistrate acted well within her discretion by excluding Kenny's testimony based on her previous sequestration order, to which Sandra had agreed.  Indeed, Sandra conceded that Kenny was subject to that order.  Again, this ruling shows no bias on the magistrate's part.  *See A.P.,* ¶ 32.

### h. Time for Drafting a Written Closing Statement

¶ 51 At the close of the testimony and presentation of evidence, Matthew's counsel offered to submit a written closing statement. The magistrate agreed and asked how long counsel needed to submit one. After looking at his calendar, Matthew's attorney said he needed two weeks. The magistrate asked Sandra how much time she wanted to respond to Matthew's closing statement. Sandra asked for four weeks. The magistrate asked Sandra if she had vacation planned or another reason for needing four weeks. Sandra said she wanted to get an attorney to help her with her closing statement. The magistrate ruled that the parties would have equal time — two weeks. Sandra said, "Okay. That will work."

¶ 52 We don't perceive any actual bias on the magistrate's part by her giving the parties equal time to draft a written closing statement. (Actually, Sandra got a total of four weeks to draft her statement, including the two weeks Matthew's counsel was drafting his.)

### i. Hostility

¶ 53　Sandra asserts that the record of the hearing shows that the magistrate was unfriendly, annoyed, and hostile when interacting with her.  The record shows nothing of the sort.

### j. Suggestion to Plead a Civil Theft Claim

¶ 54　As noted, the magistrate asked for written closing statements.  She then said, "I'm going to issue a written order.  And [Matthew's counsel], you don't have a claim for civil theft.  I'm going to give you leave to amend your petition to add a claim for civil theft. . . .  And you can include those arguments in your written closing."  Sandra contends that, by so suggesting, the magistrate unfairly assisted Matthew.[8]

¶ 55　We don't see any mention of civil theft in the record before the magistrate's comment.  All we can glean from the record is that the magistrate apparently believed that the facts of the case lent themselves to a civil theft claim.  The magistrate went too far.  But, having considered the entire record, we conclude that this single remark, made at the conclusion of evidence, doesn't rise to the level

---

[8] Matthew didn't add such a claim.

of actual bias because, on the whole, the magistrate didn't exhibit a "substantial bent of mind" against Sandra. *Jennings*, ¶¶ 19-20, 28 (quoting *Drake*, 748 P.2d at 1249); *People v. Gibson*, 203 P.3d 571, 579 (Colo. App. 2008) (we review the district court's comments individually and collectively and determine whether the court displayed a negative bent of mind against a party).

### III.    Lower Court Attorney Fees

¶ 56    Sandra also appeals the magistrate's order awarding attorney fees. Her sole contention is that, if we reverse the removal order, we must reverse the award of fees. Because we affirm the magistrate's removal order, we affirm the attorney fees award as well. *See* § 15-10-504(2)(a), C.R.S. 2024 (surcharge damages for a breach of fiduciary duty may include attorney fees and costs).

### IV.    Appellate Attorney Fees

¶ 57    Matthew requests an award of his appellate attorney fees under both C.A.R. 38 and section 15-10-504(2)(a). He is entitled to fees under section 15-10-504(2)(a). *See In re Marriage of Pawelec*, 2024 COA 107, ¶ 88; *Melssen v. Auto-Owners Ins. Co.*, 2012 COA 102, ¶ 75 ("When a party is awarded attorney fees for a prior stage of the proceedings, it may recover reasonable attorney fees and

costs for successfully defending the appeal." (quoting *Kennedy v. King Soopers Inc.*, 148 P.3d 385, 390 (Colo. App. 2006))); *People ex rel. Rein v. Meagher*, 2020 CO 56, ¶¶ 50-51. We therefore don't address his Rule 38-based request.

¶ 58    We remand this case to the district court to determine the reasonable amount of Matthew's attorney fees incurred on appeal. *See* C.A.R. 39.1.

## V.    Disposition

¶ 59    The magistrate's orders are affirmed. We remand the case to the district court to determine the reasonable amount of attorney fees incurred by Phillip's estate on appeal.

JUDGE MOULTRIE and JUDGE GRAHAM concur.